KENNETH E. GOERKE, Corporation Counsel Green County
You ask:
 1. Is the Sheriff's investigative file in a first degree murder case open to access to the defendant by a post conviction request for access to the entire file under the Wisconsin Public Records Law?
 2. If the answer to your first question is yes, what documents, if any, are protected from access?
Some of the issues generated by your questions have already been considered and I believe resolved correctly by my predecessor in 67 Op. Att'y Gen. 12 (1978). That opinion concluded that sheriff's radio logs and other interdepartmental documents were not "`books and papers required [by law] to be kept in his office'" and thus were not subject to the absolute right of access provisions under section 59.14, Stats., which reads:
 Offices where kept; when open. (1) Every sheriff, clerk of the circuit court, register of deeds, county treasurer, register of probate, county clerk and county surveyor shall keep his or her office at the county seat in the offices provided by the county or by special provision of law; or if there is none, then at such place as the board directs. The board may also require any elective or appointive county official to keep his or her office at the county seat in an office to be provided by the county. All such officers shall keep their offices open during the usual business hours of any day except Sunday, as the board directs. With proper care, the officers shall open to the examination of any person all books and papers required to be kept in his or her office and permit any person so examining to take notes and copies of such books, records, papers or minutes therefrom except as authorized in sub. (3) and s. 19.59 (3)(d) or under ch. 69.
The opinion at 67 Op. Att'y Gen. 12 concluded that section 59.14
would not apply to criminal complaint and investigation reports *Page 43 
because they are nowhere "required by law to be kept" in the sheriffs office. In contrast, the sheriffs docket, daily jail records and cash books are required by law to be kept by the sheriff. Sec. 59.23, Stats.
The significance is that section 59.14 is what the supreme court has called an absolute right of access statute. State exrel. Bilder v. Delavan Tp., 112 Wis.2d 539, 553, 334 N.W.2d 252
(1983). As such, the possible available bases for denying access to a record are more restricted than under the general public records law which was then based on section 19.21 and which has now been expanded statutorily by section 19.31 to section 19.39.Bilder, 112 Wis.2d at 552. In line with 67 Op. Att'y Gen. 12, it is my opinion that the question of access to a sheriff's criminal investigation file is to be analyzed in the context of the general public records law.
Under the general public records law, there is a presumption in favor of access to public records and access is to be denied only under extraordinary circumstances. Sec. 19.31, Stats. "[T]he general presumption of our law is that public records shall be open to the public unless there is a clear statutory exception, unless there exists a limitation under the common law, or unless there is an overriding public interest in keeping the public record confidential." Hathaway v. Green Bay School Dist.,116 Wis.2d 388, 397, 342 N.W.2d 682 (1984).
There is one clear statutory exception involving law enforcement records. Section 19.36 (2) reads:
 LAW ENFORCEMENT RECORDS. Except as otherwise provided by law, whenever federal law or regulations require or as a condition to receipt of aids by this state require that any record relating to investigative information obtained for law enforcement purposes be withheld from public access, then that information is exempt from disclosure under s. 19.35 (1).
However, there is no indication that there is the required relationship between federal law or aid and the records in the instant situation, so I assume this clear exception does not apply.
There is also section 905.09, which creates an evidentiary privilege and reads as follows:
 The federal government or a state or a subdivision thereof has a privilege to refuse to disclose investigatory files, reports and *Page 44 
returns for law enforcement purposes except to the extent available by law to a person other than the federal government, a state or subdivision thereof. The privilege may be claimed by an appropriate representative of the federal government, a state or a subdivision thereof.
However, the judicial council committee's note that follows the statute in the Wisconsin Statutes Annotated makes clear that the phrase "except to the extent available by law to a person other than the federal government, a state or subdivision thereof" is intended to preserve the supremacy of the public records law. Thus rather than the privilege being a possible exception to the public records law, the public records law works to qualify the privilege. Therefore, to my knowledge there is no clear statutory provision that would exempt the instant investigative file from the public records law.
Neither am I aware of any common law limitation that exempts criminal investigative files from the public records law. In 74 Op. Att'y Gen. 4 (1985), my predecessor considered whether there was a common law limitation on access to a prosecutor's file. It was reasoned that since at common law a defendant had no right of access to the prosecutor's file, it must also have been true that the general public would not have access under the public records law. 74 Op. Att'y Gen. at 10. There were also dicta available indicating common law limitations on access to prosecutor's files. International Union v. Gooding, 251 Wis. 362, 372,29 N.W.2d 730 (1947); State ex rel. Youmans v. Owens,28 Wis.2d 672, 680, 137 N.W.2d 470, 139 N.W.2d 241 (1965). However, I can find no such common law underpinning relating to access to sheriff's investigative files.
Along another line, it may be that the prosecutor can assert an attorney work product privilege with respect to investigative work conducted at his direction and relating directly to anticipated litigation. The United States Supreme Court has held that the attorney work product privilege applies in criminal as well as civil matters. United States v. Nobles, 422 U.S. 225, 237
(1975). The same has been said for Wisconsin law. October 1985 Wisconsin Bar Bulletin at 23.
In Nobles, the privilege was asserted with respect to the defendant's attorney and his private investigator. It may follow that the privilege could also be asserted with respect to the prosecutor and *Page 45 
those conducting investigations for him, including public law enforcement officials. The prevailing view seems to be that investigative reports that are prepared in the ordinary course of business and not tied directly to preparation for litigation do not qualify for work product protection, e.g., Scott Paper Co. v.Ceilcote Co., Inc., 103 F.R.D. 591 (1984); State v. Shipton,339 N.W.2d 87, 89 (N.D. 1983); State ex rel. Fallis v. Truesdell,493 P.2d 1134, 1136 (Okla. 1972). But see State ex rel. Keaton v.Cir. Ct. of Rush County, 475 N.E.2d 1146 (Ind. 1985), where the foregoing proposition was the minority view.
Finally, the impact of the privilege may be limited by the counteracting requirement that the prosecutor is required to disclose exculpatory evidence. Brady v. State of Maryland,373 U.S. 83, 86 (1963).
As to the common law balancing test, I believe the approach and guidance of my predecessor in 67 Op. Att'y Gen. 12 continue to be sound:
 The sheriff as custodian has a right and duty to determine whether there is a public interest in withholding partial or total inspection which is paramount to the stated statutory public interest permitting inspection. In such case such officer must give specific reasons for refusal, and the person seeking inspection can then resort to a mandamus action to test the reason. 63 Op. Att'y Gen. 400, 405-406 (1974), contains a summary of the criteria to be considered by the custodian in making a determination to permit or deny public access to records. Please refer to that opinion and to 65 Op. Att'y Gen. 31 (1976). The pendency of criminal prosecution or the investigation of incidents which might result in prosecution would in most cases justify denial of inspection on a case-by-case basis. Denial may also be appropriate where there are unsubstantiated charges which might unduly harm the person or persons involved, if disclosed. Care must also be taken to guarantee an accused a fair trial.
67 Op. Att'y Gen. at 13-14.
There is also dictum that indicates a judicial receptiveness to applying the balancing test to keep criminal investigation records closed, but only while the investigation or prosecution is still pending. Youmans, 28 Wis.2d at 685; Newspapers Inc. v.Breier, 89 Wis.2d 417, 427, 279 N.W.2d 179 (1979). The attorney general has also *Page 46 
made the distinction between pending and completed investigations. 73 Op. Att'y Gen. 38, 44 (1984).
The mere pendency of an investigation or possible prosecution is not determinative. There must be some actual underlying concerns that warrant protection. For example, there may be some of the same types of concerns that have been identified as justifying the secrecy of John Doe proceedings, to wit:
 (1) keeping a John Doe target from fleeing, or an arrested defendant from knowledge which might cause him to flee;
 (2) preventing defendants from collecting perjured testimony for the trial;
 (3) preventing those interested in thwarting the inquiry and tampering with prospective testimony or secreting evidence;
 (4) freeing witnesses from the threat of immediate retaliation; and
 (5) preventing testimony which may be mistaken or untrue or irrelevant from becoming public.
In re Wis. Family Counseling Services v. State, 95 Wis.2d 670,677, 291 N.W.2d 63 (Ct.App. 1980).
If there is a reasonable basis for having concerns such as the foregoing then secrecy may well be justified. I assume it is because these kinds of concerns are typically present in a pending criminal investigation that my predecessor said at 67 Op. Att'y Gen. at 15: "The pendency of criminal prosecution or the investigation of incidents which might result in prosecution would in most cases justify denial of inspection on a case-by-case
basis" (emphasis added). However, if in fact there is not a reasonable basis for these or other legitimate concerns in a particular case then secrecy is not justified even though the matter is pending.
Even where there are legitimate reasons justifying nondisclosure during the pendency of an investigation or prosecution, most of the reasons will dissipate once the matter comes to a close. For example, concern that a suspect may flee is removed once the suspect is convicted and imprisoned. On the other hand, even though the trial is over, the pendency of an appeal and possibility of another trial may keep concerns about disclosure alive. Whether there are residual concerns that justify nondisclosure of all or part of a closed file will also have to be made on a case-by-case basis. For example, *Page 47 
there may be a residual concern about the release of information that would have a substantial and undue adverse impact on a person's reputation as where the record contains highly damaging allegations which are wholly unsubstantiated by credible and competent evidence. See secs. 19.35 (1)(a) and 19.85 (1)(f), Stats., and Youmans, 28 Wis.2d at 685.
In conclusion, my response to your first question is that I do not find a legal basis for according blanket confidentiality to a sheriff's file regarding a first degree murder case. Although it would not be uncommon for there to exist specific concerns that would justify nondisclosure of such a file while a criminal investigation is pending, such a determination must be made on a case-by-case basis. Since underlying legitimate concerns normally would relate to the integrity and security of the investigation or possible prosecution, the reasons for nondisclosure will be removed or reduced once the matter comes to a close. Whether there are continuing reasons for nondisclosure will also have to be made on a case-by-case basis. This leads to your second question as to what if any types of records might be properly withheld.
The framework for analysis is the same. In order to justify nondisclosure of particular records in the file you must find some specific statutory exception or common law limitation or that the interests to be protected by nondisclosure outweigh the general presumption in favor of access to public records. You state that you are specifically interested in the records of the eyewitness accounts of the five year old daughter of the defendant. It appears the video tapes and audio tapes of interviews with the juvenile were provided to the defendant during pretrial discovery and I assume she testified at the trial. You state that the child is not in the custody or control of the defendant but she does visit him, I assume in prison. You feel the release of the information provided by the child would be against the public interest.
As a general matter "[p]eace officers' records of children . . . shall not be open to inspection or their contents disclosed except . . ." by court order. Sec. 48.396 (1), Stats. That confidentiality provision is most clearly intended to apply to records on juveniles who have been investigated and possibly processed for wrongdoing. See State ex rel. Herget v. WaukeshaCo. Cir. Ct., 84 Wis.2d 435, 450-51, 267 N.W.2d 309 (1978). However, the language is broad enough to also cover police records of juveniles who are witnesses or victims or *Page 48 
who otherwise become involved in a police investigation. The legislative purpose of the Children's Code is to protect and promote the "best interests of the child" and the provisions of chapter 48 are to be liberally construed to effect that objective. Sec. 48.01 (2), Stats. Therefore, it is my opinion that the confidentiality provisions of section 48.396 are available to protect the best interests of any juvenile who somehow becomes the subject of police records.
Thus I believe the eyewitness accounts of the juvenile involved in the instant case may properly be considered protected by those confidentiality provisions. Questions remain, however, whether confidentiality is affected by the fact that the statements were made available to the defendant during discovery or by the fact that the juvenile testified at trial.
In my opinion the fact that records may be available in discovery does not mean they must subsequently be made available under the public records law. These are two wholly separate and independent bases for obtaining access to records. It is quite possible that a litigant's need to know will result in access to records via discovery which would not be available to the general public under the public records law. For example, in Herget cited above, the court held that a plaintiff in a civil action seeking recovery of damages resulting from vandalism might be able to have access to police records regarding a juvenile even though those records are generally confidential.
It may be argued that since the juvenile's testimony at trial is public, any right of confidentiality attaching to the juvenile's statements to the police has been lost. On the other hand, one could argue that the juvenile's statement is public to the extent made so in open court and it is unnecessary and redundant to require access to previous statements made to the police. In my opinion the answer may be based on the question that underlies the confidentiality provisions in chapter 48: what is in the best interests of the child? If you determine that the best interests of the child would be disserved by disclosure of her statements to the police and if there is factual and rational underpinning for your determination, it is my opinion that your determination will be sustained by a reviewing court.
DJH:RWL *Page 49