STATE EX REL. DALTON, Respondent, v. MUNDY, Director of Institutions and Departments of Milwaukee County, and another, Appellants.

*No. 75–631. Submitted on briefs September 6, 1977.—*
*Decided October 4, 1977.*
(Also reported in 257 N. W. 2d 877.)

For the appellants the cause was submitted on the briefs of *Robert P. Russell*, corporation counsel, and *James J. O'Donnell*, deputy corporation counsel.

For the respondent the cause was submitted on the brief of *Ralph J. Ehlinger* and *Hoyt, Greene & Meissner, S. C.* of Milwaukee.

ABRAHAMSON, J.   The issue in this case is whether the Director of Institutions and Departments of Milwaukee County and the Administrator of the Milwaukee County General Hospital are required by sec. 19.21, Stats.,[1] the public records statute, to permit a citizen to examine certain requested records maintained by the Milwaukee County General Hospital. The trial court held that the hospital records requested in the petition were within the ambit of the public records statute. We agree.

The facts briefly stated are as follows:

---

[1] Sec. 19.21, Stats. provides:

"(1) Each and every officer of the state, or of any county, town, city, village, school district; or other municipality or district, is the legal custodian of and shall safely keep and preserve all property and things received from his predecessor or other persons and required by law to be filed, deposited, or kept in his office, or which are in the lawful possession or control of himself or his deputies, or to the possession or control of which he or they may be lawfully entitled, as such officers.

"(2) Except as expressly provided otherwise, any person may with proper care, during office hours and subject to such orders or regulations as the custodian thereof prescribes, examine or copy any of the property or things mentioned in sub. (1). Any person may, at his own expense and under such reasonable regulations as the custodian prescribes, copy or duplicate any materials, including but not limited to blueprints, slides, photographs and drawings. Duplication of university expansion materials may be performed away from the office of the custodian if necessary."

Joan Dalton sought to inspect hospital records concerning policies and practices of the Milwaukee County General Hospital in handling abortion cases. She directed her requests for inspection to Edwin Mundy, Director of Institutions and Departments of Milwaukee County, and Marvin F. Neely, Administrator of the Milwaukee County General Hospital. Dalton received some documents, study of which led to a request for additional information. Because Dalton did not know the form in which the information was available, she described the substantive content of the documents she desired rather than the titles or dates of the documents. Neely responded that Dalton's request was one to review patient records, disclosure of which "would be a breach of confidence between the medical facility, its doctors and patients," and Neely referred the matter to the Milwaukee County Corporation Counsel.

Corporation Counsel asked Dalton to be more specific as to what she sought, and she complied by preparing a "List of Documents"[2] which described the content of the

---

2

LIST OF DOCUMENTS

1. Records showing the names of all doctors who have performed elective abortions at County General since July of 1974.

2. All application forms and employment agreements of all doctors who have performed elective abortions at County General since July of 1974.

3. Records showing the number of elective abortions performed by each such doctor and the dates on which they were performed.

4. Names, application forms, and employment applications of all doctors who have agreed to perform elective abortions at County General but who have not done so.

5. All existing documents, whether or not currently in force (including instructions to or reports from staff members), discussing or setting forth procedures and policies for processing, interviewing, counselling, admitting, or referring individuals wanting elective abortions or undecided about wanting elective abortions.

records sought. Her letter forwarding the List stated that she did "not seek to discover the identities of individual patients or counselees, but [she did seek] accurate statistical information about the handling of abor-

6. All records showing the names of persons who have participated in processing, interviewing, counselling or referring such individuals since July of 1974.

7. All application forms and employment agreements of all such persons, and any other documents indicating any past or present relationships, if any, between any such person and any other organization or person engaged in elective abortion counselling or in the performing of elective abortions.

8. All records regarding individuals wanting elective abortions or undecided about wanting elective abortions, who were processed, interviewed, counselled, admitted or referred since July of 1974 which show:

a. the number of such individuals.

b. the dates on which such individuals were processed, interviewed, counselled, admitted, or referred.

c. the names of persons interviewing or counselling such individuals.

d. the action taken as a result of the interviewing and counselling of such individuals.

e. the organizations or persons to which individuals deciding to have elective abortions were referred.

f. the name of the person or persons who made the decision as to where to refer those individuals who decided to have elective abortions.

9. All existing documents, whether or not currently in force, setting forth or discussing the required qualifications of organizations or persons to whom elective abortion referrals are or have been made.

10. All documents setting forth or discussing procedures for determining whether such qualifications are or have been met by organizations or persons accepting such referrals.

11. All documents showing action taken to implement such procedures.

12. All documents setting forth or discussing procedures for post-abortion or post-referral studies or investigations of individuals having, or being referred to have, elective abortions.

13. All documents showing action taken to implement such procedures.

tions and abortion counseling." Her letter continued "If the only records containing the information are individual patient records, we will accept photocopies of those records with the names obscured. . . ."

Dalton's request was refused and she petitioned for an alternative writ of mandamus. The petition can be summarized as alleging that Milwaukee County General Hospital is a public hospital operated by Milwaukee County through the Milwaukee County Board of Public Welfare[3] and that Mundy and Neely are county officers within the meaning of sec. 19.21, Wis. Stats.; that Mundy and Neely have in their lawful possession or control or are lawfully entitled to the possession or control of records and documents relating to the operation of the hospital and in particular those requested by Dalton; that Dalton requested permission to examine or copy certain public records and documents (described in note 2); and that her request was refused in violation of sec. 19.21, Wis. Stats.

The court issued an alternative writ of mandamus on September 12, 1975, commanding Mundy and Neely either to submit the specifically listed documents and records to Dalton's examination or to serve a written return giving their reasons for not doing so. Mundy and Neely moved to quash the writ "on the ground that no reason in law is stated in the Petition herein for the issuance thereof and said Petition does not show that the plaintiff is entitled to a Writ of Mandamus as prayed." On January 12, 1976, the circuit court entered an order denying the motion to quash and granting Mundy and Neely leave to file a return. This is the order appealed from.

A motion to quash a writ of mandamus "shall be deemed a demurrer to the complaint"[4] and the issue

---

[3] *See* sec. 46.21, Stats.
[4] Sec. 293.01, Stats. 1973.

raised by this motion before the circuit court and this court is whether the facts in the petition state a cause of action under sec. 19.21, Stats.[5]

Mundy and Neely concede that those records requested by Dalton which are not individual patient medical records are public records within the meaning of sec. 19.21, Stats. Mundy and Neely's contention at the trial court and here is that the petition fails to state a cause of action because Dalton is requesting individual patient medical records which should not be viewed as public records under sec. 19.21, Stats. Mundy and Neely raise an interesting question, but it is not the one presented by the facts stated in the petition or by the trial court decision. Dalton's communications with Mundy and Neely persistently and continually denied she was seeking individual patient medical records. The trial court interpreted the petition as not requesting individual patient medical records, and we agree with this interpretation of the petition. Neither the order appealed from nor the circuit court's decision requires that individual patient medical records be made available to Dalton. The trial judge said

"It would be, in my opinion, horrendous to permit this Plaintiff or this Petitioner to go into that hospital and at random read the charts of all the patients in the gynecology or obstetrics department. However, I have equally a strong feeling that administrative records,

[5] "The motion to quash a writ of mandamus serves the same purpose as a demurrer to a complaint. The basic issue is—do the facts alleged in the . . . petition state a cause of action. The facts (but not the conclusions or statements of law) as pleaded are, for the purpose of the motion, considered to be true and the petition is to be liberally construed." *State ex rel. Farley v. Board of School Directors*, 49 Wis.2d 765, 769, 183 N.W.2d 148 (1971). *See also, Will v. H. & S.S. Department*, 44 Wis.2d 507, 511, 171 N.W.2d 378 (1969).

statistical records, records which are not personalized as to the patient come within the ambit of our public records statute."

Dalton's petition should not be interpreted narrowly to defeat it. The general rule is that a pleading will be fairly and liberally construed to give effect to its object and purpose. This rule is especially applicable in this case where the action is to compel public officers to perform their prescribed statutory duties. This court has previously noted that the "public policy, and hence the public interest, favors the right of inspection of documents and public records." *Beckon v. Emery,* 36 Wis.2d 510, 516, 153 N.W.2d 501 (1967).

Any assertions by Mundy and Neely that they cannot comply with the writ because, for example, they do not have the records requested by Dalton (the existence of which is admitted for purposes of the motion to quash),[6] or because the information requested is available only in individual patient medical records which they claim are not within the public records statute or are privileged,[7] were not properly before the trial court and are not properly before this court at this stage of the proceedings. These defenses, if they exist in this case, and any others, may be raised in making a return to the alternative writ of mandamus, and the trial court will then determine the validity of the defenses.[8]

[6] *See* H24.07, Rules of the State Board of Health, Wis. Admin. Code, relating to hospital medical record departments and medical records.

[7] *See* sec. 905.04, Stats., and H2.01, Rules of the State Board of Health, Wis. Admin. Code, relating to the physician-patient privilege.

[8] The trial court clearly set forth this point as follows:

"[A]t this stage of the game it is my duty to assume as true each and all of the allegations of the petition which constitute allegations of ultimate fact. It is not for me today to attempt to make a determination as to whether certain records are or

The petition on its face encompasses only records which the trial court properly described as statistical records, administrative records and records which are not personal to or identifiable with individual patients. The petition thus states a cause of action under sec. 19.21, Stats., and the motion to quash was properly denied.

*By the Court.*—Order affirmed.

are not kept, as to what the form of these records may or may not be, as to whether or not it will ultimately become necessary for the Respondent herein to assemble or create or put together information sought by the Petitioner. Those issues will be determined at a later state of this action. Those issues will be determined, if they become issues, after a return is filed and after those issues are raised and after the parties have an opportunity to adduce proof before the Court on each side so that findings can be made in those areas. . . ."